UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a Innovative Sports Media,**<br><br>　　　　　　**Plaintiff,**<br><br>v.<br><br>**TUMI INTERNATIONAL, INC. d/b/a Tumi Peruvian Restaurant**<br><br>and<br><br>**KEVIN C. ARNAIZ,**<br>　　　　　　**Defendants** | Civ. No. 20-14253 (KM)<br><br>**OPINION & ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the plaintiff's unopposed motion (DE 10) for a default judgment.[1] The plaintiff Innovative Sports Management, Inc. ("Innovative") owns certain rights covering a broadcast of a sporting event (the "Program").[2] The complaint alleges that the defendant restaurant Tumi International, Inc. ("Tumi") and its principal, defendant Kevin C. Arnaiz, exhibited the soccer match to its customers for commercial gain without obtaining a license or authority from Innovative.

**I.　Discussion**
　**a. Legal Standard**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

---

[1]　Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

　　"DE" = Docket entry number in this case.

　　"Compl." = Plaintiff's Complaint (DE 1)

[2]　The Program is a broadcast of the October 12, 2018 friendly soccer match between Chile and Peru. (Compl. ¶24)

1

Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a). A review of the docket confirms the allegations of the motion that these prerequisites have been met. Here, the Summons and Complaint were served on Defendants on December 8, 2020. (DE 4) Defendants failed to answer or otherwise respond to the Complaint within the deadline. The clerk entered default on May 11, 2021. (Clerk's entry following DE 9)

Accordingly, I am satisfied that the prerequisites to filing a default

judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### i. Merits/Existence of Defense

As always, evaluation of the first factor is made difficult by the defendant's failure to answer or to oppose the motion for default judgment. My independent review of the record, however, does not suggest that the claims are legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Innovative has successfully stated a claim for relief as against Tumi.

The complaint alleges that the Program broadcast originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. (Compl. ¶24) For a fee, a commercial establishment could legitimately obtain a license to receive the unscrambled signal and display the broadcast to customers. (Compl. ¶25)

Tumi is a restaurant in Elizabeth, New Jersey, whose owner or proprietor is defendant Kevin C. Arnaiz. It has a capacity of approximately 70 persons. The complaint alleges that Tumi accessed the Program without purchasing a license and then displayed it to its customers for commercial benefit. The precise technological means by which it did so are unknown, but many such means are available. (DE 10-1 at 4–5)

Innovative contracted with the producer of the Program to obtain the exclusive right to market and enter into agreements to exhibit the Program in

the United States and Canada. (DE 10-1, Ex. A) Innovative did not enter into such an agreement with Tumi. (DE 10-1 at 3)

Count 1 alleges that the display of the Program at the restaurant constituted a violation of 47 U.S.C. § 605(a).[3]

Count 2 alleges that the display of the Program at the restaurant constituted a violation of 47 U.S.C. § 553.[4]

Count 3 alleges unlawful interference with prospective economic advantage.

Court 4 alleges unlawful interference with contractual relations.

I find that the facts as alleged make out a cause of action for Counts 1 and 2 under the wording of the relevant statutes.[5]

### ii.   Prejudice/Culpability

The second and third factors also weigh in favor of default. Defendant was properly served but failed to appear or defend. It is clear that the Plaintiff

---

[3]   (a) Practices prohibited

Except as authorized by chapter 119, title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such

has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default. *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully

---

      communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

[4]      (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined

      (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

      (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C. § 553.

[5]      Innovative includes brief and conclusory claims of unlawful interference with prospective economic advantage and unlawful interference with contractual relations in its complaint. These claims, however, are not included in its motion for default judgment. I therefore will not address the merits of these claims.

negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment. I will grant the motion for default judgment.

### d. Damages

Innovative seeks judgment on claims brought under both 47 U.S.C. § 605 and 47 U.S.C. § 553. The two statutes apply to different conduct. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) (stating that § 605 applies to satellite transmissions and § 553 applies to transmissions over cable). Because defendants have failed to respond and thus denied discovery to Innovative, it is extremely difficult, if not impossible, for Innovative to discover how the defendants accessed the broadcast. Innovative acknowledges that it cannot recover duplicative damages under both statutes and elects to recover under 47 U.S.C. § 605.[6] While I agree that statutory damages are available, I do not accept the full scope of plaintiff's damages argument.

Citing 47 U.S.C. § 605(e)(3)(C)(i)(II) & (ii), Innovative seeks $3,000 in statutory damages, plus an enhancement of $12,000 for a willful violation.[7]

---

[6] Under both statutes, the calculation of damages is largely left up to the discretion of the court, so the practical difference between the two is minor.

[7] (C)

(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) [actual damages]; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an

6

Under the statute, the actual amount awarded lies within the sound discretion of the court, taking all relevant circumstances into account. Thus, in analogous Section 605 cases, many courts have adopted a five-factor analysis to determine whether enhanced damages are warranted. These courts consider "(1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast." *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *7 (D.N.J. Mar. 13, 2013) (citing *Kingvision Pay-Per-View Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). This approach both compensates plaintiffs for the damages they have suffered and deters those who aim to profit from piracy.

    I analyze the matter as follows. Innovative suffered harm when defendants intercepted and broadcasted the Program without purchasing the rights to do so in violation of Section 605. To purchase a license from Innovative for the full 70-person capacity of the restaurant would have cost $1000. (DE 10-1 at 24) This amount is the extent of Innovative's actual damages.

---

        aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

    (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a).

    (iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. § 605(e)(3)(C).

For purposes of calculating statutory damages, Innovative has supplemented the complaint with affidavits. An auditor employed by the plaintiff visited the restaurant and actually witnessed the violation. (DE 10-1 at 17–18) Although the auditor estimated that the restaurant had a capacity of 70 persons, during his time in the establishment he counted at most 25 people. (*Id.*) In addition, in the one photograph in which patrons are visible, all appear to be dining rather than watching the Program. (DE 10-1 at 20) There was no cover charge. (DE 10-1 at 17) No one attended the door. (*Id.*) Innovative does not claim that Tumi has repeatedly intercepted broadcasts nor that it advertised the broadcast, nor that it charged premiums on food and drink during the broadcast. (DE 10-1 at 6–8)

I accept that the damages award must exceed the $1000 license fee in order to serve as a deterrent. The violation, however, is not particularly egregious. There is no indication that the restaurant promoted the event, or that it purposely used the Program to attract patrons. Indeed, it is not clear that the patrons came to watch, or were paying any attention to, the Program. It is unlikely that Tumi reaped substantial (or indeed any) profits from displaying the Program. Nor, as noted, did the plaintiff suffer any calculable damages beyond the nonpayment of the licensing fee.

Innovative cites a number of cases that take very different approaches to calculating damages, understandably focusing on cases with unusually high damage awards. A common and reasonable strategy calculates damages by simply applying a small multiplier to the licensing fee, with the size of the multiplier determined by the egregiousness of the defendant's conduct under the five-factor analysis. See, e.g., *J & J Sports Productions, Inc. v. Ramirez*, 2018 WL 1961107, at *2 (S.D.N.Y. Apr. 9, 2018); *Waldron*, 2013 WL 1007398 at *8; *Innovative Sports Management v. Cortez*, 2020 WL 882131, at *5 (D.N.J. Feb. 24, 2020).

As noted above, I find no particular aggravating factors here, and will consequently impose a trebled enhancement for the purposes of deterrence. All in all, I will award damages of $3,000.

Section 605 mandates an award of costs and attorneys' fees to an aggrieved party. 47 U.S.C. § 605(e)(3)(B)(iii). In accordance with Local Civil Rules 54.1 and 54.2, Plaintiff shall file its application for costs and attorneys' fees within 30 days of the entry of this Order.

## ORDER

For the foregoing reasons,

IT IS this 2nd day of September, 2021,

ORDERED that the motion (DE 10) for default judgment is granted, and the proposed default judgment will be entered against defendants, jointly and severally, and in favor of plaintiff Innovative, in a total amount of $3,000.

IT IS FURTHER ORDERED that Plaintiff is awarded reasonable attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) of an amount to be determined upon separate application within 30 days of the entry of this Order; and

IT IS FURTHER ORDERED that Plaintiff shall submit, with its calculation of costs and fees, a proposed form of Judgment.

/s/ Kevin McNulty
_____
**Kevin McNulty
United States District Judge**